Alberto SANTIAGO SANCHEZ DE-
FUENTES, Petitioners–Appellees,

v.

Richard L. DUGGER, Robert Butter-
worth, Respondents–Appellants.

No. 90–3234.

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1991.

Belle B. Turner, Asst. Atty. Gen., Dayto-
na Beach, Fla., for respondents-appellants.

Letty Marques, Smallwood and Kelly,
Kissimmee, Fla., Alan J. Baverman, Atlan-
ta Ga., for petitioners-appellees.

Before TJOFLAT, Chief Judge,
DUBINA, Circuit Judge, and PECK *,
Senior Circuit Judge.

* Honorable John W. Peck, Senior U.S. Circuit
Judge for the Sixth Circuit, sitting by designa-
tion.

DUBINA, Circuit Judge:

The appellants, Richard L. Dugger and Robert Butterworth (hereinafter "Dugger"), appeal the grant by the United States District Court, Middle District of Florida, of appellee's petition for writ of habeas corpus.

## I. FACTUAL BACKGROUND

Appellee, Alberto Santiago Sanchez De-Fuentes ("Santiago"), was involved in an automobile accident at 6:45 p.m. on March 25, 1987, which caused the death of Martha Widner. Accident investigators found Santiago's Studebaker truck approximately seven feet into the victim's lane.

Richard Widner, the victim's fifteen year old son, testified that he was riding in a car with his mother when a truck crossed over into their lane and hit them on the left side. His mother unsuccessfully tried to steer to the right to avoid the accident. After the accident, Richard got out of the crushed car and observed a man getting out of the truck and leaning against his vehicle. Richard approached the man, who was Santiago, and requested assistance for Martha Widner who was trapped inside the automobile and still alive. Santiago declined to assist even though he was a licensed physician. When Richard later saw Santiago at the hospital, Santiago was slurring his speech, spoke slowly, and had pink eyes.

When Chris McAdams, a Florida Highway Patrol Trooper, arrived at the scene of the accident, he detected a faint to moderate odor of alcohol on Santiago's breath. McAdams transported Santiago to the hospital for a blood test, which was performed at about 8:15 p.m. The supervisor of the chemistry and toxicology section of the Or-

lando, Florida Regional Crime Laboratory testified that he performed tests on Santiago's blood sample and determined that it contained a blood alcohol level of .16%.

## II. PROCEDURAL HISTORY

On December 3, 1987, Santiago was charged by amended information with a violation of § 316.193(3),[1] Florida Statutes, 1987, for operating a motor vehicle on March 25, 1987, while under the influence of alcoholic beverages to the extent that his normal faculties were impaired or while he had a blood alcohol level of .10% or higher, and by reason of such operation, caused the death of Martha Widner. A second count charged vehicular homicide pursuant to § 782.071, Florida Statutes, 1987, for the same conduct.

Santiago proceeded to jury trial on February 15–19, 1988. Santiago's motion for judgment of acquittal was granted as to count two, vehicular homicide. The jury found Santiago guilty of DUI manslaughter as charged in count one of the information. He was sentenced to a term of incarceration of three years, which was stayed pending appeal.[2] Santiago timely filed an appeal to the District Court of Appeal, Fifth District of Florida, which entered its per curiam decision, affirming the judgment of conviction, on April 11, 1989. The petition for writ of habeas corpus and supporting memorandum of law were filed in the United States District Court, Middle District of Florida, on August 8, 1989. The issue presented in the petition was whether Santiago had been deprived of his constitutional right to a fair trial because the trial court instructed the jury concerning an allegedly mandatory rebuttable presumption

1. 316.193. Driving under the influence; penalties

(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and; (a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired; or (b) The person has a blood alcohol level of 0.10 percent or higher ...

(3) Any person: (a) Who is in violation of subsection (1); (b) Who operates a vehicle; and (c) Who, by reason of such operation, causes: ... 3. The death of any human being is guilty of DUI manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

2. After the direct appeal became final, Santiago began serving his sentence and served it in full during the pendency of his petition for writ of habeas corpus in the district court.

created by § 316.1934(2)(c), Florida Statutes, 1987.[3]

On December 12, 1989, the district court entered its order granting the petition for writ of habeas corpus. The court found that the instruction given to the jury could have been interpreted as creating a mandatory rebuttable presumption, and was therefore unconstitutional. The district court also found the statute upon which the jury instruction was based to be unconstitutional. Notice of appeal was timely filed by Dugger on March 15, 1990. By order dated April 3, 1990, this court granted Dugger's motion for stay pending appeal.

## III. DISCUSSION

### A. *Procedural Default*

 Dugger argues that Santiago abandoned his objection to the jury instruction which gave rise to a procedural default and thus there was an adequate and independent state court ground for denying federal habeas corpus relief. More specifically, Dugger contends that Santiago did not lodge an objection to the offending jury instruction when the trial court, following a request by the jury, reinstructed it on DUI manslaughter. Dugger claims that this issue has been defaulted by abandonment of any objection pursuant to *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Federal courts cannot reach the merits of a petitioner's claim unless the petitioner can establish cause for the default and prejudice resulting

therefrom. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). However, in the present case, Santiago's objection was preserved according to Florida law. *See Williams v. State*, 395 So.2d 1236 (Fla.Dist.Ct.App.1981). The court in *Williams* stated that it was unnecessary to raise an objection both at the charge conference and at the end of the court's instructions to the jury. Santiago raised his objection to the jury charge at the charge conference, but did not raise it again when the judge reinstructed the jury on the same charge after an explanation of DUI manslaughter. Since a second objection was not necessary, we find there was no procedural bar.

### B. *The Jury Instruction*

The district court held that the jury instruction given in Santiago's trial, taken almost verbatim from Florida Statutes, § 316.1934(2)(c), created an unconstitutional mandatory rebuttable presumption which shifted the burden of proof to the accused and violated *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). As the Supreme Court stated in *Sandstrom*, the state was prohibited from using evidentiary presumptions in a jury charge that had the effect of relieving the state of its burden of persuasion beyond a reasonable doubt of every essential element of the crime. 442 U.S. at 524, 99 S.Ct. at 2459.

---

3. 316.1934. Presumption of impairment; testing methods

... (2) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving, or in actual physical control of, a vehicle while under the influence of alcoholic beverages or controlled substances, when affected to the extent that his normal faculties were impaired or to the extent that he was deprived of full possession of his normal faculties, the results of any test administered in accordance with s. 316.1932 or s. 316.1933 and this section shall be admissible into evidence when otherwise admissible, and the amount of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's blood, or by chemical or physical test of the person's breath, shall give rise to the following presump-

tions: ... (c) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, that fact shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. Moreover, such person who has a blood alcohol level of 0.10 percent or above is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood alcohol level. The percent by weight of alcohol in the blood shall be based upon grams of alcohol per 100 milliliters of blood. The foregoing provisions of this subsection shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.

This court must review the constitutionality of a challenged jury instruction by reviewing the entire jury charge. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Upon a careful reading of the complete jury instructions given by the court in Santiago's trial, we find that the state was not relieved of its burden of persuasion and thus the district court erred in finding that the instruction in question created an unconstitutional mandatory rebuttable presumption.

■ A presumption is an evidentiary device that enables the trier of fact to presume the existence of an element of the crime from a basic fact already proven beyond a reasonable doubt. The vast majority of presumptions are given to the jury during the instructions on the law at the close of the evidence. In *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Supreme Court recognized that the state may employ presumptions in order to satisfy its burden of proof, and delineated the types of presumptions which are, and are not, constitutionally permissible in criminal cases. In *Ulster County,* the Court stated that "[t]he most common evidentiary device is the entirely permissive inference or presumption, which allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." 442 U.S. at 157, 99 S.Ct. at 2224. The permissive inference is not burden shifting and thus is not violative of *Sandstrom.*

■ In determining whether a jury charge offends the principles set forth in *Sandstrom,* the threshold inquiry is to determine the nature of the presumption which it describes. 442 U.S. at 514, 99 S.Ct. at 2454. "The court must determine whether the challenged portion of the instruction created a mandatory presumption or merely a permissive inference...." *Francis,* 471 U.S. at 314, 105 S.Ct. at 1971. "[A] mandatory rebuttable presumption requires a jury to find that the presumed fact follows the proven fact unless the defendant produces evidence to rebut the exist-

ence of the presumed fact." *Miller v. Norvell,* 775 F.2d 1572, 1575 (11th Cir.1985), *cert. denied,* 476 U.S. 1126, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986). "A permissive inference suggests to a jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis,* 471 U.S. at 314, 105 S.Ct. at 1971. A mandatory presumption violates the due process clause if it relieves the state of the burden of persuasion on an element of the offense. *Ulster County,* 442 U.S. at 156, 99 S.Ct. at 2224.

■ In *Francis,* the Court held that in reviewing the constitutionality of a challenged jury instruction, a specific instruction must be viewed in the context of the entire jury charge and the question was whether a reasonable juror could have understood the specific instruction to be a mandatory presumption that shifted the burden of proof to the defendant. 471 U.S. at 325, 105 S.Ct. at 1977. "If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the state of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole." 471 U.S. at 315, 105 S.Ct. at 1971. The analysis "requires careful attention to the words actually spoken to the jury ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Id.,* (quoting *Sandstrom v. Montana,* 442 U.S. at 514, 99 S.Ct. at 2454 (1978)).

■ A reasonable juror would not have interpreted the instruction in the case before us to be burden shifting due to the judge's use of language emphasizing the state's burden of proof. In his charge, the judge stated that the state was required to prove the elements of the offense beyond a reasonable doubt. The record demonstrates that the judge explained to the jury that Santiago had pled not guilty and thus the jury must presume that he was innocent until the presumption had been over-

come by the evidence to the exclusion of and beyond a reasonable doubt. The judge pointed out that Santiago "was not required to prove anything." The record demonstrates the judge's direction as to the jury's use of its common sense to decide what evidence was reliable in considering its verdict. The judge also stated that the Constitution required the state to prove its accusations against Santiago; Santiago did not have to prove or disprove anything. The judge never used any burden shifting language in his instructions to the jury and thus no unconstitutional mandatory rebuttable presumption was created.

We do express concern, however, with the judge's use of the words "prima facie" in his instructions to the jury. This language, taken from the statute, was reflected in the record when the judge instructed the jury as to the blood alcohol content necessary to find that Santiago was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. The words "prima facie" should not have been used because the average juror would not know what they mean. Although we agree that the use of the words "prima facie" was imprudent, we find that the jury instruction, when read in conjunction with all of the other instructions, was not violative of *Sandstrom*.

The Florida Supreme Court also expressed concern over the use of the words "prima facie" in a recent decision. In *Wilhelm v. Florida*, 568 So.2d 1 (Fla.1990),[4] the key language was "prima facie case," which may have led a juror to think that evidence of .10% or more blood alcohol level was sufficient by itself to establish the defendant's guilt.

While the jury instruction in the present case also contained the words "prima facie," the jury instruction must be read as a whole, as mandated by *Francis*. Under the *Francis* analysis, the jury instruction in Santiago's trial did not shift the burden of persuasion to Santiago due to the trial judge's careful explanation of the state's burden to prove each and every element of the offense beyond a reasonable doubt.

The effect of the jury instruction given in Santiago's trial is analogous to the effect of the jury instruction given in *State v. Rolle*, 560 So.2d 1154 (Fla.1990), *cert. denied*, — U.S. —, 111 S.Ct. 181, 112 L.Ed.2d 144 (1990).[5] In *Rolle*, the judge instructed the jury concerning evidence of impairment. The judge stated that the instruction would have led a reasonable juror to understand the challenged instruction as allowing proof of a blood alcohol level of .10% or higher to be evidence of impairment. The use of the word "evidence" did not shift the burden of proof to the defendant and did not create a mandatory rebuttable presumption. The jury decides the weight to be given all the evidence in reaching its verdict. That is the jury's duty. The jury in Santiago's trial considered all of the evidence and decided Santiago was guilty. The jury instruction never shifted the burden of proof to Santiago.[6]

In conclusion, since we find no *Sandstrom* violation, we REVERSE the district court and REMAND with directions to the district court to deny the petition for writ of habeas corpus. We further VACATE the district court's order holding the Florida statute unconstitutional on the basis

---

4. In *Wilhelm*, the Court held that a jury instruction based upon § 316.1934(2)(c), Florida Statutes (1986), created an unconstitutional mandatory rebuttable presumption because the words "prima facie" in a jury instruction would not be understood by the reasonable juror. Thus, the juror would be forced to guess at its meaning from the context in which it is used and in this case, that context is an explanation in the jury instructions of what the jury can and cannot "presume." The jury may have understood the instruction as an irrebuttable mandatory presumption.

5. In *Rolle*, the Florida Supreme Court held that a jury instruction which contains evidence that a defendant had a blood alcohol level of .10% or more "would be sufficient by itself to establish" that the defendant was impaired and the instruction did not create an unconstitutional mandatory rebuttable presumption on the issue of impairment.

6. The complete jury charge given by the trial judge in Santiago's criminal trial is attached to this opinion as an appendix.

that the district court had no standing to make that determination.

REVERSED, VACATED and REMANDED.

## APPENDIX

(JURY RETURNED TO THE COURTROOM, AND THE FOLLOWING PROCEEDINGS WERE HAD:)

THE COURT: MEMBERS OF THE JURY, I ALSO THANK YOU FOR YOUR ATTENTION DURING THIS TRIAL. AND AS IN THE PAST, I ASSUME YOU WILL CONTINUE WITH YOUR ATTENTION TO THESE INSTRUCTIONS ON THE LAW THAT APPLIES TO THIS CASE.

THE DEFENDANT IN THIS CASE HAS BEEN ACCUSED OF THE CRIME OF WHAT IS CALLED' D.U.I. MANSLAUGHTER. BEFORE YOU CAN FIND THE DEFENDANT GUILTY OF D.U.I. MANSLAUGHTER, THE STATE MUST PROVE THE FOLLOWING THREE ELEMENTS BEYOND A REASONABLE DOUBT.

FIRST, THAT THE DEFENDANT OPERATED A VEHICLE; SECONDLY, BY REASON—OR THE DEFENDANT BY REASON OF SUCH OPERATION CAUSED THE DEATH OF THE VICTIM IN THIS CASE, MARTHA WIDNER; THIRDLY, THAT AT THE TIME OF SUCH OPERATION, THE DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES TO THE EXTENT THAT HIS NORMAL FACULTIES WERE IMPAIRED OR HAD A BLOOD ALCOHOL LEVEL OF POINT 10 PERCENT—THAT'S ONE–TENTH OF ONE PERCENT—OR HIGHER.

VEHICLE, AS THAT TERM IS USED IN THESE INSTRUCTIONS, IS ANY DEVICE IN, UPON OR BY WHICH ANY PERSON OR PROPERTY IS OR MAY BE TRANSPORTED OR DRAWN UPON A HIGHWAY, EXCEPT DEVICES USED EXCLUSIVELY UPON STATIONARY RAILS AND TRACKS.

NORMAL FACULTIES, AS THAT INSTRUCTION IS USED IN THESE INSTRUCTIONS, MEAN THOSE FACULTIES OF A PERSON SUCH AS THE ABILITY TO SEE, HEAR, WALK, TALK, JUMP, AND IN GENERAL TO NORMALLY PERFORM THE MANY, MANY MENTAL AND PHYSICAL ACTS OF OUR DAILY LIVES.

ALCOHOLIC BEVERAGES ARE CONSIDERED TO BE BEER, WINE, WHISKEY, AND ALL OTHER ALCOHOLIC BEVERAGES OF ANY KIND AND DESCRIPTION WHICH ARE MADE FOR HUMAN CONSUMPTION.

IF YOU FIND FROM THE EVIDENCE THAT AT THE TIME OF THE OPERATION OF THE VEHICLE THAT THE DEFENDANT HAD A POINT 05 PERCENT OR LESS BY WEIGHT OF ALCOHOL IN HIS BLOOD, HE IS PRESUMED NOT TO BE UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES TO THE EXTENT HIS NORMAL FACULTIES ARE IMPAIRED. THAT'S PURSUANT TO FLORIDA STATUTES.

YOU MAY DISREGARD THIS PRESUMPTION IF IT HAS BEEN REBUTTED BY OTHER EVIDENCE.

SECONDLY, IF YOU FIND THAT AT THE TIME OF THE OPERATION OF THE VEHICLE THAT THE DEFENDANT HAD IN EXCESS OF POINT 05 PERCENT BUT LESS THAN POINT 10 PERCENT BY WEIGHT OF ALCOHOL IN HIS BLOOD, THERE IS NO PRESUMPTION THAT THE DEFENDANT WAS OR WAS NOT UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES TO THE EXTENT THAT HIS NORMAL FACULTIES WERE IMPAIRED.

SUCH FACT, HOWEVER, MAY BE CONSIDERED WITH OTHER COMPETENT EVIDENCE IN DETERMINING WHETHER THE DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES TO THE EXTENT HIS NORMAL FACULTIES WERE IMPAIRED.

THIRDLY, IF YOU FIND THAT AT THE TIME OF THE OPERATION OF THE VEHICLE THAT THE DEFENDANT HAD POINT 10 PERCENT OR MORE BY WEIGHT OF ALCOHOL IN

HIS BLOOD, IT IS PRIMA FACIE EVIDENCE THAT THE DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES TO THE EXTENT THAT HIS NORMAL FACULTIES WERE IMPAIRED.

THE KILLING OF A HUMAN BEING IS EXCUSABLE AND THEREFORE LAWFUL WHEN COMMITTED BY ACCIDENT AND MISFORTUNE IN DOING ANY LAWFUL ACT. BY "LAWFUL" MEANS WITH USUAL ORDINARY CAUTION AND WITHOUT ANY UNLAWFUL INTENT OR BY ACCIDENT OR MISFORTUNE.

THE DEFENDANT HAS ENTERED A PLEA OF NOT GUILTY. THIS MEANS YOU MUST PRESUME OR BELIEVE THE DEFENDANT IS INNOCENT. THE PRESUMPTION STAYS WITH THE DEFENDANT AS TO EACH MATERIAL ALLEGATION IN THE INFORMATION THROUGH EACH STAGE OF THE TRIAL UNTIL IT HAS BEEN OVERCOME BY THE EVIDENCE TO THE EXCLUSION OF AND BEYOND A REASONABLE DOUBT.

TO OVERCOME THE DEFENDANT'S PRESUMPTION OF INNOCENCE, THE STATE HAS THE BURDEN OF PROVING THE FOLLOWING TWO ELEMENTS: FIRST, THAT THE CRIME WITH WHICH THE DEFENDANT IS CHARGED WAS COMMITTED; AND, SECONDLY, THAT THE DEFENDANT IS THE PERSON WHO COMMITTED THE CRIME. THE DEFENDANT IS NOT REQUIRED TO PROVE ANYTHING.

WHENEVER THE WORDS "REASONABLE DOUBT" ARE USED, YOU MUST CONSIDER THE FOLLOWING: A REASONABLE DOUBT IS NOT A POSSIBLE DOUBT, A SPECULATIVE, IMAGINATIVE OR FORCED DOUBT. SUCH A DOUBT MUST NOT INFLUENCE YOU TO RETURN A VERDICT OF NOT GUILTY IF YOU HAVE AN ABIDING CONVICTION OF GUILT.

ON THE OTHER HAND, IF AFTER CAREFULLY CONSIDERING, COMPARING AND WEIGHING ALL THE EVIDENCE THERE IS NOT AN ABIDING CONVICTION OF GUILT, OR, IF HAVING A CONVICTION, IT IS ONE WHICH IS NOT STABLE BUT ONE WHICH WAVERS AND VACILLATES, THEN THE CHARGE IS NOT PROVED BEYOND A REASONABLE DOUBT AND YOU MUST FIND THE DEFENDANT NOT GUILTY BECAUSE THE DOUBT IS REASONABLE.

IT IS TO THE EVIDENCE INTRODUCED UPON THIS TRIAL AND TO IT ALONE THAT YOU ARE TO LOOK FOR THAT PROOF.

A REASONABLE DOUBT AS TO THE GUILT OF THE DEFENDANT MAY ARISE FROM THE EVIDENCE, FROM CONFLICT IN THE EVIDENCE OR FROM THE LACK OF EVIDENCE.

IF YOU HAVE A REASONABLE DOUBT, YOU SHOULD FIND THE DEFENDANT NOT GUILTY. IF YOU HAVE NO REASONABLE DOUBT, YOU SHOULD FIND THE DEFENDANT GUILTY.

IT IS UP TO YOU TO DECIDE WHAT EVIDENCE IS RELIABLE. YOU SHOULD USE YOUR COMMON SENSE IN DECIDING WHICH IS THE BEST EVIDENCE AND WHICH EVIDENCE SHOULD NOT BE RELIED UPON IN CONSIDERING YOUR VERDICT.

YOU MAY FIND SOME OF THE EVIDENCE NOT RELIABLE OR LESS RELIABLE THAN OTHER EVIDENCE. YOU SHOULD CONSIDER HOW THE WITNESSES ACTED AS WELL AS WHAT THEY SAID.

SOME THINGS YOU SHOULD CONSIDER ARE: DID THE WITNESS SEEM TO HAVE AN OPPORTUNITY TO SEE AND KNOW THE THINGS ABOUT WHICH THE WITNESS TESTIFIED? DID THE WITNESS SEEM TO HAVE AN ACCURATE MEMORY? WAS THE WITNESS HONEST AND STRAIGHTFORWARD IN ANSWERING THE ATTORNEYS' QUESTIONS? DID THE WITNESS HAVE SOME INTEREST IN HOW THE CASE SHOULD BE DECIDED? DOES THE WITNESS'S TESTIMONY

AGREE WITH THE OTHER TESTIMONY AND OTHER EVIDENCE IN THE CASE? DID THE WITNESS AT SOME OTHER TIME MAKE A STATEMENT THAT IS INCONSISTENT WITH THE TESTIMONY HE GAVE IN COURT?

YOU MAY RELY UPON YOUR OWN CONCLUSION ABOUT THE WITNESS. A JUROR MAY BELIEVE OR DISBELIEVE ALL OR ANY PART OF THE EVIDENCE OR THE TESTIMONY OF ANY WITNESS.

EXPERT WITNESSES ARE LIKE OTHER WITNESSES WITH ONE EXCEPTION. THE LAW PERMITS AN EXPERT WITNESS TO GIVE HIS OPINION.

HOWEVER, AN EXPERT'S OPINION MAY ONLY BE RELIED UPON WHEN GIVEN ON A SUBJECT ABOUT WHICH YOU BELIEVE HIM TO BE AN EXPERT.

AS WITH OTHER WITNESSES, YOU MAY BELIEVE OR DISBELIEVE ALL OR ANY PART OF AN EXPERT'S TESTIMONY.

THE CONSTITUTION REQUIRES THE STATE TO PROVE ITS ACCUSATIONS AGAINST THE DEFENDANT. IT IS NOT NECESSARY FOR THE DEFENDANT TO DISPROVE ANYTHING. NOR IS THE DEFENDANT REQUIRED TO PROVE HIS INNOCENCE. IT IS UP TO THE STATE TO PROVE THE DEFENDANT'S GUILT BY EVIDENCE.

THESE ARE SOME GENERAL RULES THAT APPLY TO YOUR DISCUSSIONS; THAT IS, YOUR DELIBERATIONS AS JURORS. YOU MUST FOLLOW THESE RULES IN ORDER TO RETURN A LAWFUL VERDICT.

YOU MUST FOLLOW THE LAW AS IT IS SET OUT IN THESE INSTRUCTIONS. IF YOU FAIL TO FOLLOW THE LAW, YOUR VERDICT WILL BE A MISCARRIAGE OF JUSTICE. THERE IS NO REASON FOR FAILING TO FOLLOW THE LAW IN THIS CASE. ALL OF US ARE DEPENDING UPON YOU TO MAKE A WISE AND LEGAL DECISION IN THIS MATTER.

THIS CASE MUST BE DECIDED ONLY UPON THE EVIDENCE THAT YOU HAVE HEARD FROM THE ANSWERS OF WITNESSES AND HAVE SEEN IN THE FORM OF EXHIBITS IN EVIDENCE AND ON THESE INSTRUCTIONS.

THIS CASE MUST NOT BE DECIDED FOR OR AGAINST ANYONE BECAUSE YOU FEEL SORRY FOR ANYONE OR ARE ANGRY AT ANYONE.

REMEMBER, THE LAWYERS ARE NOT ON TRIAL. YOUR FEELINGS ABOUT THEM SHOULD NOT INFLUENCE YOUR DECISION IN THIS CASE.

YOUR DUTY IS TO DETERMINE IF THE DEFENDANT IS GUILTY OR NOT GUILTY IN ACCORD WITH THE LAW. IT IS THE JUDGE'S JOB TO DETERMINE WHAT A PROPER SENTENCE WOULD BE IF THE DEFENDANT IS GUILTY.

WHATEVER VERDICT YOU RENDER MUST BE UNANIMOUS. THAT IS, EACH JUROR MUST AGREE TO THE SAME VERDICT.

IT IS ENTIRELY PROPER FOR A LAWYER TO TALK TO A WITNESS ABOUT WHAT TESTIMONY THE WITNESS WOULD GIVE IF CALLED TO THE COURTROOM. THE WITNESS SHOULD NOT BE DISCREDITED BY TALKING TO A LAWYER ABOUT HIS TESTIMONY.

FEELINGS OF PREJUDICE, BIAS OR SYMPATHY ARE NOT EQUALLY REASONABLE DOUBTS, AND THEY SHOULD NOT BE DISCUSSED BY ANY OF YOU IN ANY WAY. YOUR VERDICT MUST BE BASED ON YOUR VIEWS OF THE EVIDENCE AND/OR THE LAW CONTAINED IN THESE INSTRUCTIONS.

DECIDING A VERDICT IS EXCLUSIVELY YOUR JOB. I CANNOT PARTICIPATE IN THAT DECISION IN ANY WAY. PLEASE DISREGARD ANYTHING I MAY HAVE SAID OR DONE THAT MADE YOU THINK I PREFER ONE VERDICT OVER ANOTHER.

YOU WILL RENDER YOUR VERDICT ON A VERDICT FORM, WHICH I'M HOLDING IN MY HAND, AND YOU WILL TAKE THIS VERDICT FORM WITH YOU TO THE JURY ROOM. YOU'LL ALSO TAKE THE EXHIBITS THAT HAVE BEEN INTRODUCED INTO EVIDENCE.

AT THE TOP OF THE VERDICT FORM IN THE UPPER RIGHT–HAND CORNER IS THE NAME OF THE COURT AND THE CASE NUMBER, FILE NUMBER. THAT'S CIRCUIT COURT FOR OSCEOLA COUNTY AND THE CASE NUMBER IS IDENTIFIED AS THE FILE IN THE CASE. THE NAMES OF THE PARTIES; STATE OF FLORIDA VERSUS ALBERTO SANTIAGO SANCHEZ DEFUENTES.

IN THE CENTER OF THE PAGE IS THE TITLE OF THIS PIECE OF PAPER, WHICH WILL BE ENTERED IN THE COURT FILE AFTER IT HAS BEEN PROPERLY EXECUTED BY YOU; AND, THAT IS, THIS IS THE VERDICT.

THERE ARE TWO CHOICES. YOU SELECT ONE OF THESE BY MAKING A CHECK OR "X" MARK ON THE APPROPRIATE LINE.

IF YOU CHECK THE TOP LINE OF THE TWO CHOICES, YOUR VERDICT WOULD BE, AS STATED ON THE VERDICT FORM, WE, THE JURY, FIND THE DEFENDANT GUILTY OF D.U.I. MANSLAUGHTER, AS CHARGED IN THE INFORMATION. IF YOU CHECK THE SECOND LINE, YOUR VERDICT WOULD BE, AS STATED ON THE VERDICT FORM, WE, THE JURY, FIND THE DEFENDANT NOT GUILTY.

AT THE BOTTOM OF THE PAGE IT SAYS SO SAY WE ALL, WHICH IS SIMPLY A STATEMENT THAT THIS IS A UNANIMOUS VERDICT; THIS IS THE VERDICT OF EACH OF YOU AND ALL OF YOU.

NOW, INCIDENTALLY, WHEN YOU COME BACK TO THE COURT WITH A VERDICT IN THIS CASE, WE WILL— THE VERDICT WILL BE READ HERE IN OPEN COURT. THAT'S CALLED PUBLISHING THE VERDICT. YOU WILL BE PRESENT AT THAT TIME SO THAT YOU HEAR THE VERDICT BEING READ HERE IN THE OPEN COURT, FOLLOWING WHICH, I WILL ASK EACH OF YOU IF YOU CONCUR IN THAT VERDICT.

THE VERDICT IS SIGNED BY ONE PERSON; THAT IS, THE FOREPERSON CHOSEN BY YOU FROM YOUR NUMBER DURING YOUR DELIBERATIONS.

AFTER YOU RETURN TO COURT, IN ORDER TO DETERMINE THAT IT IS THE VERDICT OF ALL OF YOU, WHERE IT SAYS SO SAY WE ALL, I WILL ASK EACH OF YOU IF THAT IS YOUR VERDICT. AS I SAID, THAT'S CALLED POLLING THE JURY.

THE FOREPERSON YOU HAVE SELECTED SHOULD DATE—THERE'S A DATE LINE AT THE VERY BOTTOM ON THE LEFT SIDE SAYING DATED THIS BLANK DAY OF FEBRUARY. AND TODAY IS THE 19TH DAY OF FEBRUARY. AND THEN AT THE LOWER RIGHT IS THE LINE FOR THE SIGNATURE OF THE FOREPERSON.

IN JUST A FEW MOMENTS YOU WILL BE TAKEN BACK TO THE JURY ROOM BY THE BAILIFF. THE FIRST THING YOU SHOULD DO IS ELECT A FOREPERSON. THE FOREPERSON PRESIDES OVER YOUR DELIBERATIONS IN THE MANNER THAT A CHAIRPERSON PRESIDES OVER A MEETING.

IT IS THE FOREPERSON'S JOB TO SIGN AND DATE THE VERDICT FORM WHEN ALL OF YOU HAVE AGREED ON A VERDICT IN THIS CASE. THE FOREPERSON—WELL, WHEN YOU REACH A VERDICT, YOU CAN KNOCK ON THE DOOR AND TELL THE BAILIFF, WHO WILL BE SITTING OUTSIDE, THAT YOU HAVE REACHED A VERDICT. AT THAT POINT, WE WILL REASSEMBLE HERE IN THE COURTROOM AND HAVE YOU RETURN TO THE COURTROOM. THE FOREPERSON WILL BRING THE VERDICT FORM BACK TO THE COURTROOM.

WHEN YOU HAVE BEEN SEATED HERE, I WILL ASK YOU IF YOU HAVE REACHED A VERDICT. THE FORE-PERSON WILL TELL ME SO. ONE OF THE BAILIFFS WILL GET THE VER-DICT FORM FROM YOU, BRING IT OVER AND GIVE IT TO ME SO THAT I CAN SEE THAT IT IS PROPERLY EXE-CUTED, THAT YOU'VE SELECTED ONE OF THE TWO VERDICTS AND THAT IT HAS BEEN DATED AND SIGNED. FOLLOWING WHICH, I WILL HAND IT OVER TO THE CLERK HERE, WHO WILL PUBLISH IT OR READ IT.

OF COURSE, EITHER A MAN OR WOMAN MAY BE THE FOREPERSON OF A JURY.

YOUR VERDICT FINDING THE DE-FENDANT EITHER GUILTY OR NOT GUILTY MUST BE UNANIMOUS. THE VERDICT MUST BE THE VERDICT OF EACH JUROR AS WELL AS THE JURY AS A WHOLE.

IN CLOSING, LET ME REMIND YOU THAT IT IS IMPORTANT THAT YOU FOLLOW THE LAW SPELLED OUT IN THESE INSTRUCTIONS IN DECIDING YOUR VERDICT. THERE ARE NO OTHER LAWS THAT APPLY TO THIS CASE. EVEN IF YOU DO NOT LIKE THE LAWS THAT MUST BE APPLIED, YOU MUST USE THEM. FOR TWO CENTURIES WE HAVE AGREED TO A CONSTITUTION AND TO LIVE BY THE LAW. NONE OF US HAS THE RIGHT TO VIOLATE THE RULES WE ALL SHARE.

WITHOUT WAIVING ANY OBJEC-TIONS YOU MAY HAVE HAD TO THE RULINGS I MADE ON THE INSTRUC-TIONS THAT I READ, DID I READ THEM AS I HAD RULED WAS TO BE DONE?

MR. ROFFINO: I BELIEVE SO.

MR. MORGAN: I BELIEVE SO, YOUR HONOR.

THE COURT: MRS. RUDD, YOU'RE THE ALTERNATE JUROR IN THIS CASE. SO YOU ARE GOING TO HAVE TO STAY IN HERE WITH US.

DID YOU HAPPEN TO LEAVE ANY-THING IN THE JURY ROOM?

MRS. RUDD: I LEFT MY UMBRELLA.

THE COURT: OKAY. I TELL YOU WHAT. WOULD YOU MIND GOING IN THERE AND GET YOUR UMBRELLA RIGHT NOW. AND I'M GOING TO EX-CUSE YOU FROM JURY SERVICE WITH OUR APPRECIATION.

YOU MAY STAY AROUND TO SEE WHAT VERDICT IS RENDERED OR YOU MAY GO ON ABOUT YOUR BUSI-NESS. IF YOU WANT TO KNOW WHAT THE VERDICT WAS AND YOU DON'T STAY TO FIND OUT, YOU MAY CALL MY OFFICE AND FIND OUT, AND I'M SURE MY SECRETARY WILL TELL YOU.