CASANUEVA, Judge.
After being found guilty by a jury of racketeering in the operation of a pawn shop, John Wayne Tatum challenges his conviction, claiming that the court improperly instructed the jury on his criminal intent. Mr. Tatum raises four issues; we reverse because we find merit in the first, that his due process rights were violated because the trial court gave a special jury instruction on a presumption of guilt in dealing in stolen property, based on section 812.022(4), Florida Statutes (1997), without a proper predicate. Although the State claims the issue was insufficiently preserved for appellate review, we find the error to be fundamental. See Reed v. State, 837 So.2d 366, 369 (Fla.2002) (holding it is fundamental error to inaccurately define the malice element of the crime *333 where that element was disputed); see also Abbott v. State, 744 So.2d 578 (Fla. 2d DCA 1999). We have also carefully considered Mr. Tatum’s arguments on the remaining three issues and affirm as to them.[1]
The essential facts of the case are not disputed. Mr. Tatum, while operating his family’s pawn shop business, fell prey to a sting operation begun when St. Petersburg police officers became suspicious of one of his employees, Wayne Newton, who was apparently engaging in illegal fencing activities with known burglars at a local motel. Mr. Tatum was not implicated in this fencing operation; charges against him were based solely on purchases he or Mr. Newton made at his pawn shop. Two plainclothes detectives gained Mr. Newton’s trust and confidence and sold him or Mr. Tatum mostly watches and jewelry. Although the undercover officers represented to either Mr. Tatum or Mr. Newton that some of the merchandise they wanted to pawn belonged to them, other evidence demonstrated that some merchandise was stolen and Mr. Tatum either knew or should have known it was.
The State charged Mr. Tatum with a violation of the Florida Racketeer Influenced and Corrupt Organization [RICO] Act,[2] based on ten alleged predicate acts of conspiring to deal in stolen property or dealing in stolen property[3] between July 1998 and February 1999. At Mr. Tatum’s trial in which Mr. Newton was the main witness against him, the jury found him guilty of the RICO charge, a first-degree felony. The trial court adjudicated him guilty and sentenced him to seven and a half years in prison. Mr. Tatum’s criminal intent was the contested issue, based solely on his and his employee’s dealings with undercover officers during the sting operation.
At the jury charge conference and over objection by defense counsel,[4] the State requested and the trial court acquiesced to a special jury instruction that tracked the language of section 812.022(4). This section is titled “Evidence of theft or dealing in stolen property,” and subsection (4) provides:
Proof of the purchase or sale of stolen property by a dealer in property, out of the regular course of business or without the usual indicia of ownership other than mere possession, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property knew or should have known that it had been stolen.
Mr. Tatum argues that giving this special instruction violated his due process rights by creating a mandatory rebuttable presumption of guilt, shifting the burden of proof to the defendant, or, alternatively, by creating an arbitrary and irrational permissive inference. We agree with Mr. Tatum that this case must be reversed but on a narrower ground than the constitutional issue he raises. Mr. Tatum claims that the language of the instruction impermissi-bly shifted the burden of proof to the defendant, as a reasonable jury would understand it. We find that no predicate was laid for the giving of this instruction, *334 and, thus, Mr. Tatum is entitled to a new trial with a properly charged jury.

IMPROPER PREDICATE

Section 812.022(4) states that if the State proves that a dealer in property purchases or sells stolen property “out of the regular course of business or without the usual indicia of ownership other than mere possession, unless satisfactorily explained,” an inference arises that the person buying or selling the property knew or should have known that the property was stolen.[5] This language focuses on the accused’s state of mind or mens rea, because the State is trying to show that the accused “knew or should have known” that the property was stolen. A special jury instruction based on this language is permissible only when an evidentiary predicate is properly laid. The predicate should focus upon an accused’s direct and personal behavior or involvement in the transaction giving rise to the crime of purchasing stolen property.
When the issue is mere possession of stolen property rather than a dealer in property dealing in stolen property, subsection (2) of the same statute, like subsection (4), permits the jury to draw an inference regarding an accused’s knowledge of the stolen nature of property. To be entitled to the inference allowed by subsection (2), “the prosecution must demonstrate a factual basis for [the defendant’s] possession.” Boone v. State, 711 So.2d 594, 596 (Fla. 1st DCA 1998). Critically, “the instruction is proper only where the possession is personal, where it involves a distinct and conscious assertion of possession by the accused, and where the possession is exclusive.” Id. In Boone, at the time the defendant was taken into custody he did not personally possess or have custody of the stolen property. Furthermore, no evidence established that the accused had exercised any dominion or control over the stolen property. In the absence of such evidence, the First District held it was error to give a jury instruction based on section 812.022(2).
Applying the reasoning of Boone to the analogous situation before us, we conclude that before a trial court may give an instruction based on section 812.022(4) in the prosecution of a dealer in property, the State must also demonstrate a factual basis for the instruction. The statute establishes the predicate requirements:
1. that stolen property was purchased;
2. that the purchase was made by the defendant, a dealer in property; and
3. that the purchase took place either:
a. out of the regular course of business, or
b. without the usual indicia of ownership, other than mere possession.
The second element is especially noteworthy: the purchase must be made by the defendant. If all of the above requirements are met, the prosecution receives the benefit of the inference to which these facts give rise via the jury instruction, i.e., that the dealer had a particular state of mind when he made the purchase — he knew or should have known of the stolen nature of the property. The inference goes to prove an essential element of the crime, the defendant’s mens rea. Thus, entitlement to the statutory instruction is linked to the defendant’s conduct or direct participation in a transaction involving stolen property.
*335 For example, if the evidence were to show that a third party purchased the stolen property but then testified that the purchase was done at the suggestion of the defendant, a dealer in property, there would be no conduct by the defendant from which a jury could logically infer the dealer’s requisite knowledge. Instead, the instruction and the inference arising from it would merely serve to improperly bolster the third party’s credibility. Such was the case in Boone, 711 So.2d at 596.
Because Mr. Tatum’s case involved a RICO prosecution, a number of criminal predicate acts were alleged, and the State was required to prove at least two of them. Two of these alleged predicate acts will serve to illustrate the statute’s application. The evidence showed that on August 11, 1998, the two undercover detectives brought five watches to pawn at Mr. Tatum’s shop. Their contact was with the employee, Mr. Newton. Then, Mr. Tatum walked over and examined the watches. Although the detectives represented that the watches belonged to them, there was evidence suggesting that it was more likely that the two were selling property they had stolen. Mr. Tatum exchanged cash for the watches and did not complete a pawn slip for the transaction. Here, Mr. Tatum’s participation in the transaction, including handing over the money, properly established an evidentiary basis to support giving the special instruction. The evidence indicated that Mr. Tatum was a dealer in property, that he personally purchased stolen property, and that he did so out of the regular course of business.
A second alleged predicate act took place on August 21, 1998. On this occasion, the undercover detectives did not deal with Mr. Tatum as he was not present in the shop. The detectives negotiated with Mr. Newton about purchasing thirteen items of gold jewelry, some containing diamonds and other gemstones. During their conversation with Mr. Newton, the detectives made veiled references to a burglary that had netted them the merchandise. Again, money was exchanged, a hundred dollars for all the items, and no pawn transaction form was completed. Because Mr. Tatum was absent and did not participate in this transaction, there was no personal conduct- from which an inference of his knowledge could be derived. The evidence failed to show that he, as a dealer, purchased any property, much less property that by the nature of the transaction suggested that it was stolen. Thus, giving the requested special instruction tracking the language of section 812.022(4) in this instance would be improper and only serve to bolster Mr. Newton’s testimony as a State’s witness.
Because it was error to instruct the jury without limitation or clarification as to Mr. Tatum’s personal involvement showing possible criminal intent in a particular alleged predicate act supporting the RICO charge, and because we cannot say that the error was harmless, we reverse and remand for a new trial.

CONSTITUTIONALITY

Because we remand for a new trial with a properly charged jury, it is likely that the trial court will be required to resolve Mr. Tatum’s argument that tracking the language of section 812.022(4), Florida Statutes (1997), is unconstitutional. We discuss the following cases only as an aid to the trial court should it be required to determine this issue on remand.
In Edwards v. State, 381 So.2d 696 (Fla.1980), our supreme court upheld the statutory inference created by section 812.022(2), Florida Statutes (1977), against constitutional challenges of violation of due process and the privilege against self-incrimination. There, the court found a ra *336 tional connection between the fact proven, possession of stolen goods by the defendant, and the fact presumed or inferred, that the defendant knew the goods were stolen. Id. at 697. In a later case, the supreme court reiterated that “[j]ury instructions referring to the inference arising from the unexplained possession of stolen property have been specifically approved by this Court.” Consalvo v. State, 697 So.2d 805, 815 n. 18 (Fla.1996). Before Consalvo was decided, the United States Supreme Court spoke on at least three occasions of inferences juries may be allowed to make: County Court of Ulster County, New York v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); and Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). These three cases present an interesting evolution in the standard under which jury instructions are reviewed.
“A presumption is an evidentiary device that enables the trier of fact to presume the existence of an element of the crime from a basic fact already proven beyond a reasonable doubt. The vast majority of presumptions are given to the jury during the instructions on the law at the close of the evidence.”[6] Santiago Defuentes v. Dugger, 923 F.2d 801, 804 (11th Cir.1991). In Ulster County, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777, the Supreme Court reviewed a New York statute that created a presumption of illegal possession of a firearm when certain other facts were shown. The Supreme Court admonished that:
The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder’s freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device’s constitutional validity in a given case remains constant: the device must not undermine the factfinder’s responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.
Ulster County, 442 U.S. at 156, 99 S.Ct. 2213 (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and Mullaney v. Wilbur, 421 U.S. 684, 702-703 n. 31, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)). The Supreme Court then defined a permissive inference as one “which allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant.” Id. at 157, 99 S.Ct. 2213. In comparison, a mandatory presumption “tells the trier that he or they must find, the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts.” Id. The concern with a mandatory presumption is twofold. First, it may affect the strength of the reasonable doubt burden of proof borne by the prosecution and, second, it may improperly shift the burden of proof to the defendant. Id. Because it is the prosecution’s burden to prove beyond a reasonable doubt every element of a charged offense, presumptions may not be utilized in the same way *337 against a defendant in a criminal case as they might be against a defendant in a civil case.
The statutory presumption at issue in Ulster County told the jury that if the prosecution proved that loaded firearms were found in a vehicle, the jury could presume from this evidence that the occupants of the vehicle had unlawful possession of those firearms.[7] However, the Court found that the presumption was effective only so long as there was no evidence from the prosecution contradicting the facts leading to the presumption, and the presumption disappeared when such contradictory evidence was adduced. Ulster County, 442 U.S. at 162-63, 99 S.Ct. 2213. Furthermore, in examining all the evidence the prosecution produced in the case, the Court noted that the statutory presumption did not need to be rebutted solely by affirmative proof from the defendant. It could have been rebutted by any evidence or lack of evidence in the case. Id. The Court noted that the facts of Ulster County showed that it was highly improbable that a 16-year-old female passenger in the company of three adult men was solely responsible for the two heavy handguns the police officer saw in plain view when he stopped the automobile. The two guns were in her purse on the front floorboard, and the two guns were so large that the purse could not be closed. The two guns were within easy access of the driver of the car and even, perhaps, of the two rear passengers. The Court concluded that it was reasonable for the jury to reach a guilty verdict because:
In such a case, it is surely rational to infer that each of the [defendants] was fully aware of the presence of the guns and had both the ability and the intent to exercise dominion and control over the weapons. The application of the statutory presumption in this case therefore comports with the standard laid down in Tot v. United States, 319 U.S. [463,] 467, 63 S.Ct. [1241,] 1244 [87 L.Ed. 1519] [ (1943) ], and restated in Leary v. United States, supra, 395 U.S. [6,] 36, 89 S.Ct. [1532,] 1548 [23 L.Ed.2d 57] [ (1969) ].
Ulster County, 442 U.S. at 164-65, 99 S.Ct. 2213. As applied, the Court concluded the statutory presumption in the New York statute did not violate the defendants’ due process rights. Id.
Six years later, in Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344, the Supreme Court concluded that a Georgia jury instruction on a statutory presumption violated the Fourteenth Amendment’s requirement that the State prove every element of a criminal offense beyond a reasonable doubt. The Georgia trial court had instructed the jury as follows:
The acts of a person of sound mind and discretion are presumed to be the product of the person’s will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.
Id. at 311-12, 105 S.Ct. 1965. Initially, the Supreme Court analyzed whether the instruction allowed a permissive inference or decreed a mandatory presumption. “A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.” *338 Id. at 314, 105 S.Ct. 1965 (footnote omitted). In reviewing challenged language in a jury instruction, the Court said that the potentially offending words must be considered in the context of the entire jury charge in order to resolve the federal constitutional question of whether a reasonable jury could have understood the challenged language as a mandatory presumption that shifted the burden of proof or persuasion on the element of intent to the defendant once the State had proved predicate acts. Id. at 315, 105 S.Ct. 1965. This is so because other instructions may have cleared up any ambiguity that may have been perceived by the jury.
The Supreme Court found that the two challenged sentences were mandatory rebuttable presumptions, “cast in the language of command,” because each sentence used the words “are” or “is presumed.” Id. at 316, 105 S.Ct. 1965. The jurors were not told that they could infer a different conclusion or that they had a choice. Furthermore, the additional language indicating that the presumptions “may be rebutted” was not sufficient to save these instructions from the infirmity. “A mandatory rebuttable presumption is perhaps less onerous [than an irrebuttable or conclusive presumption] from the defendant’s perspective, but it is no less unconstitutional.” Id. at 317, 105 S.Ct. 1965. “The lesson of Franklin is clear — a mandatory rebuttable presumption concerning the issue of intent is impermissible under the Due Process Clause.” Lancaster v. Newsome, 880 F.2d 362, 366 (11th Cir.1989).
Finally, in Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316, the Supreme Court issued a reminder that the challenged jury instruction must be considered in the context of the entire set of instructions as well as the trial record. However, unlike Franklin, 471 U.S. at 315, 105 S.Ct. 1965, which phrased the constitutional issue as whether a reasonable juror could have understood the instruction as shifting to the defendant the burden of persuasion on the element of intent, in Boyde the Court held that where an ambiguous instruction was at issue the question was whether there was a “reasonable likelihood” that the “jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.” 494 U.S. at 380, 110 S.Ct. 1190. See also Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In a later opinion, the Supreme Court reiterated the standard outlined in Boyde and Estelle: “the proper inquiry is not whether the instruction ‘could have’ been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it.” Victor v. Nebraska, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (applying the “reasonable likelihood” standard to direct review of a state criminal conviction). See also Jones v. United States, 527 U.S. 373, 390, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).
With this background in mind on remand, if the trial court determines that any special instruction based on section 812.022(4) passes constitutional muster as a permissive inference rather than a mandatory presumption, it may be advisable to include clarifying language in the jury instruction to avoid any reasonable likelihood that the jury will apply the instruction in an unconstitutional manner, by preventing it from considering constitutionally relevant evidence.
Reversed and remanded for a new trial.
ALTENBERND, C.J., and COVINGTON, J., concur.

. These other claims were that the special instruction constituted judicial comment on the evidence, that he was entitled to an instruction on entrapment, and that there was prosecutorial misconduct in the State's closing argument.

. § 895.01-.06, Fla. Stat. (1997).

. §§ 812.019, 777.011, Fla. Stat. (1997).

. Although defense counsel objected to the special jury instruction, it was not upon the same grounds advanced in this appeal. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982).

. Based on our disposition, we decline to decide here whether this inference is mandatory or permissive, rebuttable or irrebuttable.

. “Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime — that is, an 'ultimate' or 'elemental' fact — from the existence of one or more 'evi-dentiary' or 'basic' facts.” Ulster County, 442 U.S. at 156, 99 S.Ct. 2213.

. The Court noted that there were several reasonable exceptions in the statute. For example, the presumption could not apply to a hitchhiker or a taxi cab driver. Ulster County v. Allen, 442 U.S. at 142 n. 1, 99 S.Ct. 2213 (1979).