**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan RUBIO–VILLAREAL, Defendant–Appellant.**

**No. 89–50655.**

United States Court of Appeals, Ninth Circuit.

Argued En Banc and Submitted Oct. 17, 1991.

Decided June 11, 1992.

Martha M. Hall, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Nancy L. Worthington, and David Curnow, Asst. U.S. Attys. San Diego, Cal., for plaintiff-appellee.

---

**1.** The only difference between the instruction in *Castillo–Burgos* and the instruction in this case

Before: WALLACE, Chief Judge, BROWNING, HUG, SCHROEDER, PREGERSON, ALARCON, CANBY, NORRIS, REINHARDT, LEAVY and T.G. NELSON, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Juan Rubio–Villareal appeals his convictions on several charges relating to the importation and possession of cocaine. On March 13, 1991, a panel of this court reversed his conviction on several grounds. *United States v. Rubio–Villareal*, 927 F.2d 1495 (9th Cir.1991). We accepted the government's suggestion to rehear the case en banc for the purpose of considering the propriety of an instruction that permitted the jury to infer that the defendant knew contraband was contained in the vehicle from two facts alone: (1) that the defendant was the driver, and (2) that contraband was concealed in the body of the vehicle. We hold that this instruction is deficient and remand the case to the panel for consideration of whether the error was harmless. The facts and Parts I, III, and IV of the panel opinion are unchanged by this opinion. Part II of the panel opinion is vacated and replaced by this opinion.

I

The district court gave the following permissive inference instruction:

You are instructed that if you find that the defendant was the driver of a vehicle containing contraband in this case; and if you find that the cocaine was found inside that vehicle and concealed in its body, you may infer from these two facts, that the defendant knew that the cocaine was in the automobile; however, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrants any inference which the law permits the jury to draw.

We approved the use of a substantially similar instruction in *United States v. Castillo–Burgos*, 501 F.2d 217, 218–19 (9th Cir.), *cert. denied*, 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284 (1974).[1] In doing so,

is that the *Castillo–Burgos* instruction permitted the jury to infer knowledge if it found that the

we relied on three previous cases that did not involve challenges to jury instructions. Rather these three cases involved the sufficiency of the evidence to support the conviction of the driver of a vehicle in which contraband was concealed. *See United States v. Ramos*, 476 F.2d 624, 625 (9th Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973); *United States v. Dixon*, 460 F.2d 309, 309–10 (9th Cir.) (per curiam), *cert. denied*, 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972); *United States v. Ascolani–Gonzalez*, 449 F.2d 159, 159–160 (9th Cir.1971) (per curiam).

■ In judging the propriety of a permissive inference by reference to the holdings in sufficiency of the evidence cases, we appear to have made a questionable step in our reasoning. The standard of review employed in sufficiency of the evidence cases is highly deferential. When reviewing for sufficiency of the evidence we view the evidence in the light most favorable to the prosecution and we will affirm the conviction if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Adler*, 879 F.2d 491, 495 (1988). When a sufficiency of the evidence case is used as the basis for an inference instruction, the effect is not to protect the deliberative process of the jury but to intrude upon it, perhaps impermissibly.

Our subsequent cases have cast some doubt upon the propriety of the *Castillo–*

*Burgos* instruction in certain situations. Shortly after *Castillo–Burgos*, we expressed doubt about the instruction when the defendant was not the sole occupant of the car. *United States v. Campbell*, 507 F.2d 955, 957 (9th Cir.1974). Then, in *United States v. Martinez*, 514 F.2d 334, 341–42 (9th Cir.1975), we held that a substantially similar instruction constituted reversible error when the evidence did not show that the defendant actually "controlled" the vehicle. *Id.* at 338–39, 342.[2] However, *Martinez* did not overrule *Castillo–Burgos*. In fact, we stated that "[t]here will be many cases in which the instruction would be perfectly proper." *Id.* at 342. We have occasion today to reconsider whether the permissive inference instruction we approved in *Castillo–Burgos* is proper. Upon reconsideration, we hold that it is not.

## II

■ We recognize at the outset that the instruction at issue in this case describes a *permissive* inference. The jury was clearly instructed that it was not required to draw the inference. A permissive inference is constitutional so long as it can be said "with substantial assurance" that the inferred fact is "more likely than not to flow from the proved fact on which it is made to depend." *Ulster County v. Allen*, 442 U.S. 140, 166 n. 28, 99 S.Ct. 2213, 2229 n. 28, 60 L.Ed.2d 777 (1979) (quoting *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969)).[3]

defendant was "the driver *and sole occupant* of the automobile containing the contraband," 501 F.2d at 218 (emphasis added), while the instruction in this case permitted the same inference if the jury found that the defendant "was the driver of a vehicle containing contraband."

**2.** A second ground for our decision in *Martinez* was the fact that the instruction did not tell the jury it was not required to draw the inference. *See id.* at 342.

**3.** We are not required to reach Rubio–Villareal's constitutional claims because the same harmless error standard applies to erroneous jury instructions as applies to constitutional errors. In both cases, the error must be "harmless beyond a reasonable doubt." *Chapman v. California*,

386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We have restated this as a standard requiring reversal if "there is a *reasonable possibility* that the error materially affected the verdict." *United States v. Valle–Valdez*, 554 F.2d 911, 915 (9th Cir.1977) (emphasis in original). In *Valle–Valdez*, we suggested that errors in jury instructions might be measured against the more-probable-than-not standard and that the question of which standard to apply was still unresolved. *Id.* at 916. This suggestion led us on one occasion to state that we had yet to definitively determine the harmless error standard to apply to erroneous jury instructions in criminal cases. *See United States v. Smeaton*, 762 F.2d 796, 799 (9th Cir.1985). Despite that statement, however, it appears that the proper standard has been definitively determined. As

However, a jury instruction need not be unconstitutional for us to find it defective. We routinely review jury instructions on a case-by-case basis to determine if they misstate the elements of a crime. *See, e.g., United States v. Douglass*, 780 F.2d 1472, 1475 (9th Cir.1986). In certain instances we have also found it advisable to forbid or limit the use of particular instructions. We have done so in at least two general situations. First, we have disapproved the use of certain instructions when they might permit a jury to convict without finding all the elements of a crime beyond a reasonable doubt. *See, e.g., United States v. Garzon*, 688 F.2d 607, 609 (9th Cir.1982) ("conscious avoidance" instruction should be given rarely because of risk that jury will convict on standard of negligence). Second, we have disapproved instructions that, in our view, confuse the jury or intrude impermissibly on its deliberative process. For example, we have created a per se rule against giving an *Allen* charge more than once unless the jury has requested that the charge be repeated. *United States v. Seawell*, 550 F.2d 1159, 1162–63 (9th Cir.1977). The reason for this rule is to prevent the court from intruding on the deliberative process of the jury. As we said in *Sullivan v. United States*, 414 F.2d 714 (9th Cir.1969), a decision relied on in *Seawell*, an *Allen* instruction "approaches the ultimate permissible limits to which a court may go in guiding a jury towards a verdict." 414 F.2d at 716. Our holding in *Seawell* that the district court may not repeat the instruction did not rely on the Constitution but on "a sound rule of practice." 550 F.2d at 1163.

To give another example, we have joined almost every other circuit [4] in disapproving the instruction that "witnesses are presumed to speak the truth." *United States v. Gutierrez–Espinoza*, 516 F.2d 249, 250 (9th Cir.1975) (per curiam). Again, the basis for this disapproval was not constitutional, for the Supreme Court had squarely held that this instruction did not violate due process. *Cupp v. Naughten*, 414 U.S. 141, 148–49, 94 S.Ct. 396, 401, 38 L.Ed.2d 368 (1973). Rather, we disapproved the instruction because we found it "confusing and useless." *Gutierrez–Espinoza*, 516 F.2d at 250. The Fourth Circuit has elaborated on this rationale in disapproving the use of the instruction, noting that "jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. This important function should not be encumbered by an assumption that witnesses speak the truth." *United States v. Varner*, 748 F.2d 925, 927 (4th Cir.1984) (quoting *United States v. Safley*, 408 F.2d 603, 605 (4th Cir.1969)).

Because our authority to prohibit or limit jury instructions has never been in dispute, we have never taken the occasion to make explicit the source of that authority. When a jury instruction misstates the elements of a crime, our authority clearly derives from our responsibility to interpret federal statutes. 28 U.S.C. § 1331; *see, e.g., Douglass*, 780 F.2d at 1475. When we limit an instruction because of the possibility that it may lead a jury to convict on an incorrect theory of liability, our authority arguably rests on the same basis. *See, e.g., Garzon*, 688 F.2d at 609. In some cases, however, the jury instruction that we forbid or limit does not contravene an existing statute. *See, e.g., Seawell*, 550 F.2d at 1162–63 (*Allen* charge); *Gutierrez–Espinoza*, 516 F.2d at 250 ("presumption of truth" instruction). That is true in this case as well.

In forbidding or limiting jury instructions without declaring them unconstitutional or

---

we noted in *Valle–Valdez,* our past cases had applied the reasonable possibility standard to erroneous jury instructions. *See, e.g., United States v. Rea,* 532 F.2d 147, 149 (9th Cir.), *cert. denied,* 429 U.S. 837, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976); *United States v. Duhart,* 496 F.2d 941, 945 (9th Cir.), *cert. denied,* 419 U.S. 967, 95 S.Ct. 230, 42 L.Ed.2d 182 (1974). Our post-*Valle–Valdez* cases have applied the same standard. *See, e.g., Smeaton,* 762 F.2d at 800; *United States v. Herbert,* 698 F.2d 981, 986–87 (9th Cir.), *cert. denied,* 464 U.S.

821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983). Thus, under the existing law of our circuit, an error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt. We see no reason to reconsider our existing law on harmless error today.

**4.** *See United States v. Varner,* 748 F.2d 925, 927 n. 2 (4th Cir.1984) (collecting cases).

in contravention of a statute, other circuits have seen fit explicitly to invoke their supervisory power over district courts. *See, e.g., United States v. Maselli,* 534 F.2d 1197, 1203 (6th Cir.1976) (prohibiting "presumption of truth" instruction); *United States v. Silvern,* 484 F.2d 879, 882–83 (7th Cir.1973) (en banc) (prescribing form of *Allen* charge); *United States v. Thomas,* 449 F.2d 1177, 1186–87 (D.C.Cir.1971) (same). Then–Justice Rehnquist, writing for the Court in *Cupp v. Naughten,* likewise characterized courts of appeals' decisions disapproving the "presumption of truth" instruction as instances of those courts exercising their supervisory power. 414 U.S. 141, 144 n. 4, 146, 94 S.Ct. 396, 399 n. 4, 400, 38 L.Ed.2d 368 (1973). In exercising this power, Justice Rehnquist noted that a court of appeals may require its district courts "to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution." *Id.* at 146, 94 S.Ct. at 400.[5]

█ In retrospect, it seems clear that when a court of appeals forbids or limits the use of a jury instruction without deciding that it violates either the Constitution or a statute, it is, either implicitly or explicitly, exercising its supervisory power over the district courts.[6] When we exercise our supervisory power in this way we "ensur[e] that a conviction rests on appropriate considerations validly before the jury." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). Moreover, because rules governing jury instructions apply to the district courts rather than executive branch officials, there is no threat to the principle of separation of powers. *United States v. Herrera–Figueroa,* 918 F.2d 1430, 1434 (9th Cir.1990). "In prescribing a rule applicable only to the conduct of personnel within the judicial branch, we act in a sphere where the scope of our supervisory power is at its apex." *Id.*

### III

We turn then to the instruction at issue in this case, which told the jury it could infer knowledge from two isolated facts— that the defendant was the driver and that cocaine was concealed in the body of the vehicle. Permissive inferences of this sort have been roundly criticized. Writing for the Court in *Morissette v. United States,* Justice Jackson observed that a

presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect.

342 U.S. 246, 275, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952). Citing *Morissette,* we have ourselves stated that

where intent is a necessary element of the crime, it is error for the court to instruct the jury that it may, but is not required to, infer the requisite intent from an isolated fact. There can be no presumption as to intention which would

---

**5.** The rule that federal courts may not poll a divided jury because of that procedure's possible coercive effect, *see Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), is also grounded in supervisory power rather than in the Constitution. *Lowenfeld v. Phelps,* 484 U.S. 231, 239–40 & n. 3, 108 S.Ct. 546, 552 & n. 3, 98 L.Ed.2d 568 (1988).

**6.** While there is agreement on the existence of our supervisory power over the district courts, there appears to be some uncertainty over the source of that power. Some courts have relied on the broad grant of jurisdiction in 28 U.S.C. § 2106 as the source of supervisory power. *See, e.g., United States v. Munsingwear,* 340 U.S. 36,

40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950) (power to vacate judgment as moot); *Smith v. Mulvaney,* 827 F.2d 558, 562 (9th Cir.1987) (power to reassign case to different judge); *United States v. Andersson,* 813 F.2d 1450, 1460 (9th Cir.1987) (power to remand for resentencing); *Aetna Casualty & Surety Co. v. Hunt,* 466 F.2d 1203, 1204 & n. 2 (10th Cir.1972) (power to remand for retrial). It is also possible that some supervisory power derives from Article III itself. *See generally,* Sara Sun Beale, *Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of the Federal Courts,* 84 Colum.L.Rev. 1433, 1468–73 (1984).

permit the jury to make an assumption which all the evidence considered together does not logically establish.

*Baker v. United States*, 310 F.2d 924, 930–31 (9th Cir.1962), *cert. denied*, 372 U.S. 954, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). A leading commentator has more recently observed:

> The key problem with permissive inferences is that they isolate and abstract a single circumstance from the complex of circumstances presented in any given case, and, on proof of that isolated fact, authorize an inference of some other fact beyond reasonable doubt.... Permissive inferences thus permit juries to avoid assessing the myriad facts which make specific cases unique.

Charles R. Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity*, 92 Harv.L.Rev. 1187, 1192 (1979).[7]

■ The instruction in this case illustrates the two basic faults that lie at the heart of these criticisms. First, the instruction constituted an intrusion on the jury's deliberative process because it effectively told the jury in this case that the judge thought there was sufficient evidence to convict the defendant. It was undisputed that Rubio–Villareal was the driver and that there was cocaine concealed in the body of the vehicle. The only real issue in the case was whether Rubio–Villareal knew that the vehicle contained cocaine. Thus, the instruction was the equivalent of telling the jury that the judge had denied a defense motion for a directed verdict and explaining why. The instruction implies that the court has "prejudge[d] a conclusion which the jury should reach of its own volition." *Morissette*, 342 U.S. at 275, 72 S.Ct. at 256.

A judge may, of course, comment on the evidence, but it is quite a different matter to tell the jury that the judge thinks it may infer knowledge from isolated facts. When a judge comments on the evidence, he still leaves the ultimate weighing of that evidence to the jury. When a judge tells the jury it may infer knowledge from two isolated facts, he risks conveying the message to the jury that he has weighed the evidence in his own mind and believes it is sufficient to convict. In this case, the defect was not cured when the judge told the jury "[i]t is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrants any inference which the law permits the jury to draw." The jury certainly understood that it was free to ignore the judge's conclusion—just as it would be free to ignore the information that the judge had denied a motion for a directed verdict—but disclosing the judge's own opinion nevertheless created the risk that the jury would abdicate its responsibility to evaluate the evidence in deference to the judge.

The instruction at issue in this case suffers from a second fault identified by the critics of permissive inferences in that it focused the jury on some rather than all the facts. As Professor Nesson pointed out, "[p]ermissive inferences ... permit juries to avoid assessing the myriad facts which make specific cases unique." Nesson, *supra*, at 1192. Of particular concern is the possibility that a jury may ignore exculpatory evidence. The jury is under a solemn obligation to weigh *all* the evidence presented at trial. *Morissette*, 342 U.S. at 276, 72 S.Ct. at 256 ("the jury must determine [intent], not only from the act of taking, but from that together with defendant's testimony and all of the surrounding circumstances"); *Santiago Sanchez Defuentes v. Dugger*, 923 F.2d 801, 805 (11th Cir.1991) ("The jury decides the weight to be given all the evidence in reaching its

---

7. Another commentator has suggested that permissive inferences improperly influence the jury not just by isolating particular facts but by giving a particular step of logic "the official legal imprimatur of the state." Charles Collier, Note, *The Improper Use of Presumptions in Recent Criminal Law Adjudication*, 38 Stan.L.Rev. 423, 456 (1986). The effect of such a presumption may be to encourage jurors to abdicate their responsibilities. "Jurors faced with difficult choices may understandably place the responsibility for their decision on higher authorities associated with permissive presumptions, even if the outcomes run counter to their personal and moral propensities." *Id.*

verdict. That is the jury's duty."); *United States v. Pelaes*, 790 F.2d 254, 259 (2d Cir.), *cert. denied*, 479 U.S. 842, 107 S.Ct. 151, 93 L.Ed.2d 92 (1986) ("It was the responsibility of the jury to consider all of the evidence ...").

The government contends that the permissive inference instruction's failure to tell the jury to consider all the evidence was cured by a general introductory instruction.[8] However, this instruction was given ten pages before the permissive inference instruction at issue and could not overcome the misdirection of a specific instruction that permitted the jury to find an element of the crime without considering all the evidence. Indeed we have previously held that a reference to "all the other evidence in the case" contained in the permissive inference instruction itself is not sufficient to cure this defect when those words were a passing reference rather than an explicit charge to the jury. *Martinez*, 514 F.2d at 342; *see also Walker v. KFC Corp.*, 728 F.2d 1215, 1222 (9th Cir. 1984) (preliminary instruction does not cure

---

**8.** The jury was told (emphasis added):

This burden never shifts to a defendant, for the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence; so if the jury, *after careful and impartial consideration of all the evidence in the case,* has a reasonable doubt that a defendant is guilty of a charge, it must acquit.

**9.** We note that the result we reach is not inconsistent with the Supreme Court's decisions in *Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). In both cases, the Supreme Court confined itself to the question whether an inference instruction was constitutional. *Ulster County*, 442 U.S. at 147, 99 S.Ct. at 2219; *Barnes*, 412 U.S. at 838, 93 S.Ct. at 2359. However, as we explained in Part II, we may exercise our supervisory power over the district courts to invalidate not only instructions that are unconstitutional, but also those that are misleading, unduly intrusive, or otherwise inappropriate.

In any event, the instructions at issue in *Ulster County* and *Barnes* did not contain the same defects as the instructions at issue here. In *Ulster County*, the jury was instructed to weigh all the evidence when evaluating whether or not to draw the permissive inference, and this instruction was given in close proximity to the

---

defect in instruction setting forth specific elements necessary to prove fraudulent concealment).

In summary, we conclude that the instruction given in this case was defective in two respects. First, by telling the jury that the judge thought there was sufficient evidence to convict, the instruction intruded inappropriately on the jury's deliberations. Second, by focusing the jury on two isolated facts, the instruction permitted the jury to convict without considering all the evidence presented at trial. It is apparent that the first defect turns in part on the particular facts of this case. The second defect, on the other hand, stems from the language of the instruction. Since either defect is fatal, we conclude that the instruction we approved in *Castillo–Burgos* should not be used.[9] An error in the jury instructions requires reversal unless that error is harmless. We remand to the original panel for consideration of whether the error in this case was harmless.

REMANDED.

---

one including the permissive inference. *See* 442 U.S. at 160 n. 19, 99 S.Ct. at 2226 n. 19. In addition, the jury was specifically told that it was not required to draw the inference even if the defendant did not offer any evidence to rebut it. *See id.* at 161 n. 20, 99 S.Ct. at 2227 n. 20. Thus, as the Supreme Court stressed, "the instructions plainly directed the jury to consider all the circumstances tending to support or contradict the inference ... and to decide for itself without regard to how much evidence the defendants introduced." *Id.* at 162, 99 S.Ct. at 2227 (footnote omitted).

In *Barnes*, the jury was instructed that "[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstance shown by the evidence in the case, that the person in possession knew the property had been stolen." *See* 412 U.S. at 839–40, 93 S.Ct. at 2360. The instruction was so qualified and conditioned that it was unlikely to convey a message to the jury that the judge thought the evidence was sufficient to convict. Furthermore, the jury was advised in the same instruction to consider the defendant's possession of stolen property "in light of the surrounding circumstances shown by the evidence in the case." In short, although neither the *Ulster County* nor the *Barnes* instruction is before us today, we see no inconsistency between our holding and the holdings in those cases.

WALLACE, Chief Judge, with whom Circuit Judges Alarcon and T.G. Nelson, join, concurring in the result:

I concur in the result reached by the majority opinion. I agree that the district court erred by giving this jury instruction and that we have the authority to say so. However, I write separately to discuss the basis of our authority and its limits.

The majority opinion claims that the basis for our authority to hold the jury instruction error is our "supervisory power." Majority Opinion at 298. The majority acknowledges that there is "some uncertainty over the source of that power," and suggests that it may be based on 28 U.S.C. § 2106 or Article Three of the Constitution. *Id.* at 298 n. 6. I doubt that section 2106 provides either a basis for our supervisory power or is itself authority to overturn the jury instruction. It appears only to explain what it means to have appellate jurisdiction. I also doubt that Article Three alone provides a basis for our supervisory power. Indeed, the majority opinion fails to cite a single case in support of this proposition. *See id.* I am unable to discover any basis for our "supervisory power," and therefore question its validity. However, the Supreme Court has said that we have such a power, *see, e.g., Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) (*Nova Scotia*), and we are bound by the Court's authority.

Although we have supervisory power, the power is substantially limited. The Supreme Court has recognized only three legitimate objects for federal court's exercise of supervisory power. *United States v. Simpson,* 927 F.2d 1088, 1090 (9th Cir. 1991). We may do so: (1) to implement a remedy for violation of a recognized right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct. *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (*Hasting*). Even in these discrete areas, supervisory power is subject to further limitations. Our exercise of this power may not conflict with any statute, constitutional provision, or even Federal Rule of Criminal Procedure 52(a). *See Nova Scotia,* 487 U.S. at 254, 108 S.Ct. at 2373. "To allow otherwise would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *Id.* (internal quotation marks omitted). In addition, the Supreme Court counsels us to resort to the supervisory power with "caution" and "with a view toward balancing the interests involved." *Hasting,* 461 U.S. at 506–07, 103 S.Ct. at 1979 (internal quotation marks omitted).

In the context of inferential jury instructions, we should be particularly cautious, because district courts have great discretion in wording jury instructions, *see United States v. Lopez,* 885 F.2d 1428, 1434 (9th Cir.1989), *cert. denied,* 493 U.S. 1032 (1990), and the Supreme Court has recognized the value of inference instructions, *see Ulster County Court v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979) ("Inferences and presumptions are a staple of our adversary system of factfinding.").

The importance of these limitations cannot be overemphasized. By its nature, supervisory power is exercised when there is no precedent from which to reason a conclusion. This power is the exception to our normal common law development built upon precedent. Thus, in spite of the developed limitations, the uncertain basis for the supervisory power encourages its abuse. It can entice judges to rule not according to the law, but outside it, and thus risks making our law uncertain and arbitrary. How can district judges, lawyers, and citizens make decisions if our law is to be determined by the chancellor's foot? It is therefore vital that judges observe the limitations on the supervisory power developed by the Supreme Court, and do so with great care.

I join in the result of the majority decision, but not in its reasoning.