983 F.2d 1079
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sergio RODRIGUEZ-ALVIDREZ, Defendant-Appellant.
 No. 92-10186.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 18, 1992.*
Decided Jan. 5, 1993.
 
 Before HUG, PREGERSON and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Sergio Rodriguez-Alvidrez appeals his jury conviction under 21 U.S.C. § 952(a) for knowingly and intentionally importing cocaine. This court has jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 BACKGROUND
 
 3
 On September 3, 1991, Rodriguez-Alvidrez, a bartender, met with Sergio Chavez in the bar in which Rodriguez-Alvidrez worked in Douglas, Arizona, a border town. In conversation, Chavez told Rodriguez-Alvidrez that he could repair the auto transmission in Rodriguez-Alvidrez's car. The two men agreed to meet on the following day at Rodriguez-Alvidrez's daughter's home in Agua Prieta, Sonora, Mexico, which is immediately across the border from Douglas.
 
 
 4
 At approximately 12:00 p.m. on the following day, Chavez picked up Rodriguez-Alvidrez's car in Agua Prieta, as planned, allegedly to repair the transmission. At about 1:00 p.m., Chavez returned with the car and informed Rodriguez-Alvidrez that he was unable to find a replacement transmission and that perhaps he might find one back in Arizona. Both men then attempted to return to Douglas, the defendant to pick up his daughters at school and Chavez to continue looking for the replacement part. The two men made no arrangements at this time to meet again to complete the transmission repairs. Rodriguez-Alvidrez testified that shortly before arriving at the Port of Douglas, Arizona, he rolled down the driver's side window of his car with a pair of pliers and the heat of the day, combined with his efforts, caused him to perspire.
 
 
 5
 At the primary inspection area of the port of entry, Donna Hilker, a U.S. Customs Inspector with six years of experience, observed that Rodriguez-Alvidrez was sweating, avoiding eye contact, shaking, and that he generally appeared nervous. The inspector contrasted his disposition with the fact that Rodriguez-Alvidrez was a frequent border-crosser who had been calm in previous crossings. When the inspector asked him where he was going in the United States, Rodriguez-Alvidrez replied that he was going to work in Douglas, although, in reality, he did not have to be at work until four and one-half hours later.
 
 
 6
 The inspector referred Rodriguez-Alvidrez and Chavez to a secondary inspection area for a vehicle inspection. At the secondary inspection area, Customs Inspector Steven Lynn also noticed that Rodriguez-Alvidrez was nervous and avoiding eye contact. Inspector Lynn told both men to get out of the car and then told Rodriguez-Alvidrez to open the hood. At this time, Chavez bolted from the passenger side of the vehicle back across the border into Mexico. Rodriguez-Alvidrez did not attempt to flee. Rodriguez-Alvidrez was then placed in a pat-down room and his vehicle was searched. The search revealed twenty-eight pounds of cocaine: four kilo-sized packages hidden under the rear seat and eight kilo-sized packages concealed in the passenger door. Rodriguez-Alvidrez denied any knowledge of the cocaine's presence in his vehicle.
 
 
 7
 On October 2, 1991, Rodriguez-Alvidrez was charged in a two-count indictment with (1) importation of cocaine, in violation of 21 U.S.C. § 952(a); and (2) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). On October 10, 1991, Rodriguez-Alvidrez was arraigned and pled not guilty to both charges.
 
 
 8
 Jury trial began on December 17, 1991. After submission of all the evidence but prior to closing arguments by counsel, the prosecutor discovered that during the noon recess a juror had approached the government custodian of the cocaine seized from Rodriguez-Alvidrez's car and had asked the custodian to show him the cocaine. The custodian had complied with the juror's request. In response to the juror's statement that the substance appeared to be crack, the custodian had informed the juror that the substance was indeed cocaine. The juror did not discuss this exchange with any of the other jurors.
 
 
 9
 Both the custodian and the juror were questioned under oath regarding this communication. After their testimony, the district court gave Rodriguez-Alvidrez the opportunity to request a mistrial or to proceed with only eleven jurors. Rodriguez-Alvidrez decided to proceed with only eleven jurors. A stipulation under Rule 23(b) was then prepared and signed by Rodriguez-Alvidrez, his counsel, the prosecutor, and the district court judge.
 
 
 10
 On December 19, 1991, the eleven-member jury returned a verdict of guilty as to Count I of the indictment for importation of cocaine and a verdict of not guilty as to Count II for possession with intent to distribute cocaine.
 
 
 11
 On March 5, 1992, Rodriguez-Alvidrez was sentenced to a minimum mandatory term of imprisonment of 120 months, with a 60 month term of supervised release and a special assessment of fifty dollars.
 
 DISCUSSION
 1. Sufficienty of Evidence
 
 12
 Rodriguez-Alvidrez contends that, " 'reviewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 13
 To prove the offense charged in Count I of Rodriguez-Alvidrez's indictment for violation of 21 U.S.C. § 952(a), the government was required to prove that the substance was knowingly and willfully imported and that Rodriguez-Alvidrez willfully associated himself with the importation venture. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984). Circumstantial evidence and inferences derived from it may be sufficient to sustain Rodriguez-Alvidrez's conviction. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.), cert. denied 113 S.Ct. 258 (1992); United States v. Hernandez, 876 F.2d 774, 778 (9th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 
 14
 The prosecution contends that the circumstantial evidence, viewed in conjunction with the fact that Rodriguez-Alvidrez was the owner and driver of the vehicle that entered into the United States with the concealed cocaine, was sufficient to show that he played a substantial role in importing the cocaine into the U.S. from Mexico. The prosecution further argues that a reasonable jury could have found--indeed, did find--beyond a reasonable doubt that Rodriguez-Alvidrez possessed the requisite knowledge of the cocaine's presence in his car, as required by 21 U.S.C. § 952(a). Specifically, the prosecution notes the circumstantial evidence related to Rodriguez-Alvidrez's physical disposition; the fact that Rodriguez-Alvidrez and Chavez had not made any plans to complete the transmission repairs prior to reentry into the United States; and the fact that, when asked where he was going in the United States, Rodriguez-Alvidrez told Inspector Hilker that he was going to work in Douglas even though he did not have to be at work until approximately four and one-half hours later.
 
 
 15
 Viewing the evidence in the light most favorable to the prosecution, this court agrees that the evidence is sufficient to sustain Rodriguez-Alvidrez's conviction under 21 U.S.C. § 952(a).
 
 2. Consistency of the Jury Verdict
 
 16
 Rodriguez-Alvidrez also contends that the jury verdict is inconsistent because he was acquitted on Count I of the indictment for possession with intent to distribute cocaine, yet convicted on Count II for importation of cocaine. We review de novo the issue of whether a defendant may upset a verdict on the grounds that it is inconsistent with an acquittal on some other count. United States v. Smith, 802 F.2d 1119, 1126 (9th Cir.1986).
 
 
 17
 As an initial matter, plausible scenarios may exist to indicate consistency in the jury verdict wherein the jury might have believed that Rodriguez-Alvidrez was an importer of cocaine, yet had no intention of distributing the cocaine upon arrival in the United States. However, this court need not explore such scenarios because, even if the jury verdict were truly inconsistent, we cannot consider that inconsistency as a basis for upsetting the jury conviction on Count I. United States v. Hart, 963 F.2d 1278, 1282 (9th Cir.1992), citing United States v. Powell, 469 U.S. 57 (1984).
 
 
 18
 The U.S. Supreme Court has held that consistency in the jury verdict is not necessary. See United States v. Powell, 469 U.S. 57; Dunn v. United States, 284 U.S. 390, 393 (1932). Rather, "[e]ach count in an indictment is regarded as if it [were] a separate indictment." Dunn, 284 U.S. at 393. In Powell, the Supreme Court wrote:
 
 
 19
 [I]nconsistent verdicts--even verdicts that acquit on a predicate offense while convicting on the compound offense--should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.
 
 
 20
 Id., 469 U.S. at 65. Hence, the Powell Court concluded that "the best course to take is simply to insulate jury verdicts from review on [the grounds of inconsistency]." Id., at 69.
 
 
 21
 Similarly, the Ninth Circuit has rejected outright the notion than an inconsistency in a jury verdict requires reversal. Hart, 963 F.2d at 1281-82. Rather, this circuit has held that " '[i]nconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support a guilty verdict.' " Id., at 1281, citing United States v. Guzman, 849 F.2d 447, 448 (9th Cir.1988). As discussed, the evidence at trial was sufficient to justify the jury's conviction of Rodriguez-Alvidrez for knowing importation of cocaine.
 
 
 22
 Hence, we find that any inconsistency that may appear in Rodriguez-Alvidrez's jury verdict does not require reversal of his conviction and a remand of his case for a new trial.
 
 
 23
 3. Dismissal of Juror for "Just Cause" Under Rule 23(b)
 
 
 24
 Rodriguez-Alvidrez further contends that the district court judge's dismissal, prior to deliberations, of one of the twelve jury members pursuant to Rule 23(b) of the Federal Rules of Criminal Procedure denied Rodriguez-Alvidrez his right to due process and a fair trial. We review the district court's decision to excuse a juror for just cause under Rule 23(b) for abuse of discretion. United States v. Tabacca, 924 F.2d 906, 913 (9th Cir.1991).
 
 Rule 23(b) states in relevant part:
 
 25
 Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences.
 
 
 26
 F.R.Crim.P. 23(b). Stipulating to a jury of less than twelve members has been interpreted as a "less drastic" alternative to declaring a mistrial. United States v. Thompson, 744 F.2d 1065, 1068 (4th Cir.1984). However, such a waiver of the right to a twelve-person jury requires "the express and intelligent consent of the defendant." Patton v. United States, 281 U.S. 276, 312 (1930).
 
 
 27
 The district court judge properly found "just cause" as required by Rule 23(b), recognizing the prejudice inherent in the extrajudicial contact between the juror and the government custodian.[1] Hence, the district judge's instruction to Rodriguez-Alvidrez as to his choice of either a mistrial or an eleven-member jury under Rule 23(b) was appropriate. After weighing the competing considerations of both options, Rodriguez-Alvidrez gave his knowing and intelligent consent to an eleven-person jury, through written stipulation, as required by Rule 23(b). Hence, the district court judge's acceptance of Rodriguez-Alvidrez's waiver of a twelve-member jury was proper and provides no basis for reversal of his conviction.
 
 4. Propriety of Jury Instruction
 
 28
 Rodriguez-Alvidrez also objects to a jury instruction regarding intent. We review this instruction for abuse of discretion. United States v. Lee, 846 F.2d 531, 534 (9th Cir.1988).
 
 
 29
 Rodriguez-Alvidrez argues that the instruction, "You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted," is defective under United States v. Rubio-Villareal, 967 F.2d 294 (9th Cir.1992) (en banc). Rubio-Villareal involved a similar fact scenario wherein the defendant was undisputably the driver of a vehicle in which cocaine was concealed and the only real issue remaining for the jury was whether the defendant knew that the vehicle contained cocaine. The following instruction was given to the jury in Rubio and challenged by the defendant on appeal:
 
 
 30
 You are instructed that if you find that the defendant was the driver of a vehicle containing contraband in this case; and if you find that the cocaine was found inside that vehicle and concealed in its body, you may infer from these two facts, that the defendant knew that the cocaine was in the automobile; however, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrants any inference which the law permits the jury to draw.
 
 
 31
 Id., at 295.
 
 
 32
 On appeal, this court held that this instruction was defective, observing that "[w]hen a judge tells the jury it may infer knowledge from two isolated facts, he risks conveying the message to the jury that he has weighed the evidence in his own mind and believes it is sufficient to convict." Id., at 299. Accordingly, the court held that the instruction inappropriately intruded on the jury's deliberations and, "by focusing the jury on two isolated facts, ... permitted the jury to convict without considering all the evidence presented at trial." Id., at 300.
 
 
 33
 By attempted analogy, Rodriguez-Alvidrez contends that the general instruction regarding intent in his case improperly intruded into the jury's deliberations by focusing the jury's attention on isolated facts. We cannot agree.
 
 
 34
 In contrast to the instruction invalidated in Rubio-Villareal, the instruction in the instant case did not focus the jury's attention solely on the fact that Rodriguez-Alvidrez was the driver of the vehicle that brought cocaine into the United States and did not instruct the jury to infer, or presume, intent as a result of such limited facts. Furthermore, this court has upheld instructions that were substantially similar to the one here at issue because such an instruction merely permits the jury to infer intent but does not tell the jury to presume such intent. See United States v. Lord, 711 F.2d 887, 892 (9th Cir.1983) (upholding the following instruction: "It is ordinarily reasonable to assume that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted."); United States v. Mayo, 646 F.2d 369, 375 (9th Cir.), cert. denied 454 U.S. 1127 (1981) (upholding the following instruction: "You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. ... [I]t is entirely up to you to decide what facts to find from the evidence.").
 
 
 35
 Thus, we find no error in the instruction given here.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defense counsel argues that although just cause existed to declare a mistrial as a result of the extrajudicial contact between the juror and the government agent, just cause did not exist to excuse the juror under Rule 23(b). Counsel further argues that Rodriguez-Alvidrez's choice between a mistrial and a jury of eleven was "an impossible one" and that therefore Rodriguez-Alvidrez is now entitled to a new trial. These arguments have no legal merit