**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RONNIE JERMAINE SHERRORS, | No. 07-56756 |
| Petitioner - Appellee, | D.C. No. CV-05-01262-IEG |
| v. | |
| JEANNE S. WOODFORD, | MEMORANDUM[*] |
| Respondent - Appellant. | |

| | |
|---|---|
| RONNIE JERMAINE SHERRORS, | No. 08-55524 |
| Petitioner - Appellant, | D.C. No. 3:05-cv-01262-IEG-LSP |
| v. | |
| JEANNE S. WOODFORD, | |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted December 8, 2010
Pasadena, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: B. FLETCHER, BERZON, and CALLAHAN, Circuit Judges.

The State of California appeals the grant of habeas relief to Ronnie Sherrors, who was convicted of murder, Cal. Penal Code § 187(a), the use of a deadly weapon, *id.* § 12022(b)(1), and the special circumstance of murder during the commission of a robbery, *id.* § 190.2(a)(17). The State argues that the district court erred in holding that there are grave doubts as to whether a jury instruction used at Sherrors's trial had a substantial and injurious effect or influence on the jury's verdict. Reviewing the district court's analysis de novo, *Lee v. Blodgett*, 393 F.3d 943, 964–65 (9th Cir. 2004), we affirm the grant of the conditional writ.[1]

It is undisputed that the instruction at the heart of this case, based on California Jury Instructions ("CALJIC") No. 2.15, involves a permissive inference — namely, that the jury could (but was not required to) infer that Sherrors had killed the victim, Steven Foth, from: (1) Sherrors's post-murder possession of Foth's Audi A4, plus (2) "slight" corroborating evidence. After Sherrors's conviction, but before the California Court of Appeal decided his direct appeal, the California Supreme Court held that CALJIC No. 2.15 should not be used in the

---

[1] Sherrors, who had proceeded *pro se* before the district court, later noticed a cross-appeal regarding some of the claims raised in his federal habeas petition that the district court rejected. Because Sherrors's cross-appeal presents no basis for any further or additional relief, we do not reach it.

context of nontheft offenses such as rape or murder. *People v. Prieto*, 30 Cal. 4th 226 (2003). The *Prieto* Court explained that while a suspect's knowledge and conscious possession of the victim's stolen property is compelling evidence that the suspect committed a theft offense, "the same is not true for nontheft offenses like rape or murder." *Id.* at 249 (citing *People v. Barker*, 91 Cal. App. 4th 1166, 1176 (2003)); *Barker*, 91 Cal. App. 4th at 1176 (explaining that when CALJIC No. 2.15 is "given with regard to murder, the court is essentially singling out the fact of possession of recently stolen property as one that, if the jury finds it, will support a murder conviction with merely slight corroborating evidence.").

*Prieto* did not contain a discussion of the federal due process implications of using CALJIC No. 2.15. It did, however, recognize that the use of this instruction in the context of nontheft offenses permitted the jury to draw conclusions that did not flow "naturally" or "logically" from the evidence presented. *See* 30 Cal. 4th at 249. Although *Prieto* was not framed in terms of the right to due process guaranteed by the federal Constitution, it was correct in reasoning that the presumed conclusion does not follow from the facts established. Under clearly established Supreme Court law, it violated Sherrors's right to due process to instruct the jury that it could presume that Sherrors murdered Foth from the fact that Sherrors possessed Foth's property, plus "slight" corroborating evidence,

3

because the presumed fact does not follow from the facts established. *See Francis v. Franklin*, 471 U.S. 307, 314–15 (1985); *Cnty. Court of Ulster Cnty., New York v. Allen*, 442 U.S. 140, 156–57 (1979).

Although the dissent asserts that "[t]he instructional error in this case is only one of state law" under *Prieto*, *see* Dissent at 2, it never attempts to explain why "the suggested conclusion" — that Sherrors murdered Foth — is "one that reason and common sense justify in light of the proven fact[]" that Sherrors was in possession of Foth's automobile in the days after Foth was killed. *Francis*, 471 U.S. at 314–15; *see also United States v. Rubio-Villareal*, 967 F.2d 294, 296 (9th Cir. 1992) (en banc) ("A permissive inference is constitutional so long as it can be said 'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'" (quoting *Ulster Cnty.*, 442 U.S. at 166 n.28)). Because proving Sherrors possessed Foth's automobile does not make it "more likely than not" that Sherrors murdered Foth, using CALJIC No. 2.15 in this case was an instructional error of constitutional magnitude. *Id.*

The California Court of Appeal, relying on *Prieto*, recognized that the trial court had erred in instructing the jury with CALJIC No. 2.15 in Sherrors's case, but then applied a nonconstitutional standard to evaluate whether the error was

4

harmless.[2]  In other words, the Court of Appeal failed to recognize that the instructional error was of constitutional magnitude; this error amounts to an unreasonable application of clearly-established Supreme Court law.  28 U.S.C. § 2254(d)(1); *see Francis*, 471 U.S. at 314–15; *Ulster Cnty.*, 442 U.S. at 156–57.

Due to the state court's error, we conduct an independent harmless error review pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993).  That review "requires a court to determine whether the constitutional error had substantial and injurious effect or influence in determining the jury's verdict." *Hanna v. Riveland*, 87 F.3d 1034, 1039 (9th Cir. 1996) (citation and quotation marks omitted).  "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless.  And, the

---

[2]  Under *People v. Watson*, 46 Cal. 2d 818 (1956), California courts review "non-constitutional magnitude, trial type errors" to ascertain whether it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.  *Bains v. Cambra*, 204 F.3d 964, 971 n.2 (9th Cir. 2000); *Watson*, 46 Cal. 2d at 836.  By contrast, California courts review errors of constitutional magnitude under the clearly-established federal standard set forth in *Chapman v. California*.  *See* 386 U.S. 18, 24 (1967) (requiring the reviewing court to decide whether the error was "harmless beyond a reasonable doubt").

petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting

*Brecht*, 507 U.S. at 627).[3]

We, like the district court, have grave doubt regarding whether the

instructional error had a substantial and injurious effect or influence on the jury's

verdict.[4] The State's case against Sherrors relied overwhelmingly on the testimony

of Lena Hixon, an accomplice whose story changed numerous times before trial

and whose statements under oath were repeatedly contradicted by the objective

evidence at trial. Indeed, the magistrate judge called her testimony "simply

unbelievable." Given the numerous contradictions and changing stories, the jury

---

[3] The harmless error review required under *Brecht* is expressly *independent* of that of the state court. For this reason, the dissent's contention that deference is owed to the state court's harmless error analysis is simply wrong as a matter of law. *Harrington v. Richter*, which addressed the deference owed to the state court's application of the *Strickland* standard for ineffective assistance of counsel claims under AEDPA review, is not to the contrary. *See* 131 S. Ct. 770, 785–87 (2011). The dissent's reliance on *Harrington* is, accordingly, misplaced.

[4] The dissent contends that we "whittle[] and sculpt[] the evidence to fashion an instructional error of constitutional magnitude." *See* Dissent at 3. We do no such thing; rather, we examine the evidence "on its own terms." *Id.* We have engaged in the very process mandated by Supreme Court precedent and required by "the sound and established principles that inform [the] proper issuance" of the writ of habeas corpus. *Harrington*, 131 S. Ct. at 780.

6

could well have chosen to disbelieve Hixon entirely.[5]  Besides Hixon, the other key witness for the prosecution was Latrina Walker, Sherrors's 24-year-old mentally-disabled sister, who testified that she had been drinking and smoking marijuana the evening of the murder.  Additionally, Walker's mother and aunt both testified that she was untruthful and unreliable.  In light of these reasons to doubt her accuracy as a witness, the jury well could have chosen not to believe Walker's account.[6]

No direct evidence linked Sherrors to Foth's murder.  Instead, the State only had evidence that linked Hixon to the murder, Sherrors to Hixon, and Sherrors to Foth's Audi in the days following Foth's death.  CALJIC No. 2.15 invited the jury to infer that Sherrors was guilty of murder from his possession of stolen property plus "slight" corroborating evidence.  The "slight" corroborating evidence, the jury was instructed, could have been that Sherrors was present in the general vicinity on the day in question, that he had "an opportunity to commit the crime charged," or

---

[5]  The dissent asserts that Hixon's "testimony was corroborated by, and consistent with, other evidence in the case."  Dissent at 3.  That is a significant overstatement.  Indeed, the only portions of Hixon's testimony that were corroborated are facts that no one disputes:  that Hixon was at the scene of the murder and that she had contact with Sherrors at some point before or after Foth was killed.

[6]  A third witness, who was five years old at the time of the murder and seven at trial, testified that not only did he see blood on Sherrors's shirt and shoes the night Foth was killed, but that he saw Foth dismembered by men with ninja swords.  The jury certainly could have discredited him entirely as well.

7

just "statements that may have been made with reference to the property."  As a result, it is entirely possible that the jury convicted Sherrors of first degree murder even if it disregarded most or even all of Hixon's and/or Walker's questionable testimony about Sherror's involvement in the murder, and would not have found Sherrors guilty beyond a reasonable doubt without the instruction.

The dissent suggests that the instructional error was cured by the trial court's instructions on the particular elements of the crimes charged and the beyond a reasonable doubt standard.  *See* Dissent at 4.  But these general instructions simply "could not overcome the misdirection of a specific instruction that permitted the jury to find an element of the crime without considering all the evidence." *Rubio-Villareal*, 967 F.2d at 300.  "[J]uries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and therefore we must assume that the jury took seriously what it was told in this case:  that it could convict Sherrors of murder if it found that he was in possession of Foth's vehicle, plus "slight" corroborating evidence.  Given the weaknesses in the State's case against Sherrors, such an instruction effectively relieved the prosecution of its burden of proof on the murder charge against Sherrors, and thereby violated his right to due process.

For the foregoing reasons, the district court's conditional grant of Sherrors's petition for the writ of habeas corpus is **AFFIRMED**.

**Sherrors v. A K Scribner, et al., Nos. 07-56756 and 08-55524 (cross-appeal)**

CALLAHAN, Circuit Judge, dissenting:

I dissent on the ground that there was no constitutional error in the jury instruction, and even if there was, it was harmless in the context of this case.

One evening, Ronnie Sherrors and his co-defendant stole the car that Steve Foth was driving, forced Foth in the trunk of the car, and drove out to a dark street. They pulled over, pulled Foth out of the trunk, and began stabbing him. Foth sustained approximately 83 stab wounds and bled to death. Sherrors and his co-defendant stripped Foth's body naked, discarded it in some bushes, and drove away.

Sherrors and his co-defendant were tried and convicted in state court of first degree murder, while using a deadly weapon, and with the special circumstance of murder during the course of a robbery. Each man received a sentence of life without the possibility of parole, plus one year. Sherrors filed a habeas petition in the district court, which was granted on the grounds of instructional error. This appeal followed.

In recent weeks, the Supreme Court has emphasized the narrow nature of habeas relief, reversing several decisions by our court that granted habeas relief. The Supreme Court has stated that "confidence in the writ and the law it vindicates [is] undermined, if there is judicial disregard for the sound and established

principles that inform its proper issuance." *Harrington v. Richter*, 131 S.Ct. 770, 780, 2011 U.S. LEXIS 912, *12 (Jan. 19, 2011) (reversing our decision granting habeas relief). Indeed, "AEDPA compounds the imperative of judicial caution." *Premo v. Moore,* 131 S.Ct. 733, 741, 2011 U.S. LEXIS 910, *18 (Jan. 19, 2011) (reversing our decision granting habeas relief). In particular, the Supreme Court has cautioned us against assuming that federal habeas relief is available for an error of state law. Habeas is "not a substitute for ordinary error correction through appeal." *Harrington,* 131 S.Ct. at 786, 2011 U.S. LEXIS 912 at *30. *See Swarthout v. Cooke*, 131 S.Ct. 859, 861-62, 2011 WL 197627, **2–3 (Jan. 24, 2011) (reversing our decision granting habeas relief). Of course, I recognize that the district court did not have the benefit of these recent cases when it granted habeas relief.

However, despite the Supreme Court's admonitions, the majority fails to give proper deference to the state court's decision about state law. This is the sort of de novo review that the Supreme Court said we must *not* do on habeas. *See, e.g., Harrington,* 131 S.Ct. at 786–87, 2011 U.S. LEXIS 912 at **28–29. The instructional error in this case is only one of state law, under *People v. Prieto*, 30 Cal. 4th 226, 248-49 (2003), which does not implicate constitutional due process concerns. Only a very strained reading of jury instruction CALJIC 2.15 - a reading

2

unencumbered by context or reason - might allow a jury to convict Sherrors for murder based on a less than constitutional standard of proof. There is no showing that the jury here was so naive. Moreover, *even assuming* there was constitutional error in the jury instruction, to obtain habeas relief, Sherrors would still have to show that the instructional error resulted in *actual* prejudice. Sherrors must show that the instructional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Adamson*, 507 U.S. 619, 637–38 (1993). Sherrors has not done this.

The majority whittles and sculpts the evidence in an attempt to fashion an instructional error of constitutional magnitude that prejudiced Sherrors. But that is not appropriate; the evidence must be examined on its own terms. There was ample evidence pointing to Sherrors as a murderer of Foth. Certainly, the jury was not compelled to believe Hixon, but her testimony was corroborated by, and consistent with, other evidence in the case. For example, Hixon testified that shortly before Foth was killed, Sherrors grabbed her hands, breaking two of her fingernails. When police visited the murder scene, they found a broken fingernail. Also, Hixon's testimony is consistent with the discovery of Foth's high school ring in a co-defendant's pants pocket and Hixon's boyfriend's pager number in Sherrors's pocket. Hixon's testimony is also consistent with the violent manner in

3

which Foth was murdered. Here, there was corroboration not only of the general facts contained in Hixon's testimony, but also of specific, significant details. Looking at all the testimonial and physical evidence in this case, the prosecutor presented much more than "slight" corroborating evidence to prove that Sherrors committed murder.

Further, the jury was properly instructed on the required elements of murder, robbery, and first-degree felony murder based upon a murder committed in the commission of a robbery, and the jury was told that each element had to be proved beyond a reasonable doubt. The jury was also instructed on the special circumstance of murder in the commission of a robbery. Thus, the standard of proof required by the Constitution to convict Sherrors for murder was clearly set forth and properly followed by the jury.

There was no constitutional error in Sherrors's trial and conviction, and even if there was, it was harmless. I respectfully dissent.

4